NICKELL, Plaintiff in error, vs. THE STATE, Defendant in error.

*September 19—October 13, 1931.*

For the plaintiff in error there was a brief by *James J. Kerwin* and *Bottum, Hudnall, Lecher, McNamara & Michel,* and oral argument by *Suel O. Arnold,* all of Milwaukee.

For the defendant in error there was a brief by the *Attorney General, George A. Bowman,* district attorney of Milwaukee county, *George B. Skogmo,* special assistant district attorney, and *Louis S. Wiener,* assistant district attorney, and oral argument by *Mr. Skogmo.*

FRITZ, J. The first charge is that Nickell, on February 6, 1931, in violation of sec. 147.02, Stats., unlawfully treated the sick without having a certificate of registration in basic sciences in Wisconsin. Sec. 147.02, Stats., so far as here material, provides:

"No person shall treat, or attempt to treat, the sick unless he shall have a certificate of registration in the basic sciences."

Sec. 147.01, Stats., provides that as used in secs. 147.01 to 147.12, Stats.:

"(a) To 'treat the sick' is to examine into the fact, condition, or cause of human health or disease, or to treat, operate, prescribe, or advise for the same, or to undertake, offer, advertise, announce, or hold out in any manner to do any of said acts, for compensation, direct or indirect, or in the expectation thereof.

"(b) 'Disease' includes any pain, injury, deformity, or physical or mental illness or departure from complete health and proper condition of the human body or any of its parts.

"(c) The 'basic sciences' are anatomy, physiology, pathology and diagnosis."

It was admitted on the trial that Nickell was not licensed in Wisconsin to practice medicine or optometry, and that he had no certificate of registration as required by sec. 147.02, Stats. There was credible evidence received to the following effect: On February 5 and 6, 1931, Nickell

was sales manager for a corporation named "The American Society for the Conservation of Vision," which had a suite of offices in the city of Milwaukee, and on the entrance door a sign with its corporate name and also the wording "James L. Hawkins, M. D." On February 5, 1931, a Miss Hodge and a Mrs. Nelson entered that office and spoke to the office girl who was conversing with the defendant, Nickell, who was sitting in that office. In his presence the office girl said to Miss Hodge and Mrs. Nelson, "This is Dr. Nickell and he'll take care of you." Thereupon Nickell arose and told Miss Hodge and Mrs. Nelson to come with him into another room. In that room he examined their eyes with the use of an ophthalmoscope, and he noted their observations upon having them look through various lenses at lettered charts. Then he said that each had an astigmatism. Miss Hodge told him that she had sick headaches if she did not use her glasses. He said that he would have to reduce the strength of her lenses; that after eighteen treatments she could go without any glasses, and her headache would be cured; that the treatment for curing the headache was using heating pads. He said that Mrs. Nelson would require twelve treatments, and after that she would not need glasses.

On February 6, 1931, he gave each of them a chart with dots and lettering and told them to take them home and look at the dots from different angles, and otherwise exercise their eyes daily. He told Mrs. Nelson that she could leave her glasses off, and that if she put them on it would undo everything that the treatment had done. She said she would have a headache if she left her glasses off. He replied that possibly she would for a day or two, but that the headaches would be gone by the time the treatments were over. He told each of them that the treatments were $5 each, or

six for $25, and told each to pay $5 to the office girl. He saw them make the payment and saw each receive a receipt.

Walter Campbell, who was afflicted with a condition of partial paralysis, which is sometimes referred to as blind staggers, also had a consultation in February, 1931, with Nickell regarding the condition of Campbell's eyes. Nickell told him the condition could be removed by exercises, and that their treatment would permit him to remove his glasses, but it would be by degrees and that he would have to have different lenses from time to time during the course of treatments. Nickell stood at one side of the room while he watched a chart and directed the movements of Campbell's head in reading the chart, and then gave Campbell directions as to home treatments.

That evidence was certainly ample to establish that Nickell, on or about February 6, 1931, in violation of sec. 147.02, Stats., for compensation, unlawfully did "treat the sick" as that term is defined in sec. 147.01, Stats. The astigmatism and headaches of Miss Hodge and Mrs. Nelson, and the partial paralysis of Campbell, constituted a disease, as that term is defined in sec. 147.01 (b), Stats. The manner in which he examined their eyes, and into the condition and causes of their respective diseases, and thereupon treated and prescribed and advised treatment for those conditions, and held out that by such treatment their diseased conditions, including their sight, would be remedied, clearly constituted treating the sick under the terms of secs. 147.01 (a) and 147.02, Stats. The attending circumstances and manner in which the examinations were made, the character of the treatments prescribed and given, and the accompanying advice as to their necessity and purpose and the prophesied remedial achievements, were such that it would be ridiculous to consider the treatments mere ocular calisthenics on a par

with the exercises customarily prescribed for ordinary physical culture purposes. The conviction on the first charge was well warranted by the evidence.

The second charge was that Nickell on February 6, 1931, without having a license to practice medicine, surgery, or osteopathy, "did unlawfully and wilfully use and assume the title of doctor," in violation of sec. 147.14 (3), Stats. Sec. 147.14 (3), Stats., provides that:

"No person not possessing a license to practice medicine and surgery, osteopathy, or osteopathy and surgery, under section 147.17, shall use or assume the title 'doctor' or append to his name the words or letters 'doctor,' 'Dr.,' 'specialist,' 'M.D.,' 'D.O.,' or any other title, letters or designation which represents or may tend to represent him as a doctor in any branch of treating the sick."

In support of that second charge, in addition to the evidence which has been hereinbefore referred to, the proof discloses that when Nickell, in response to the office girl's statement to Miss Hodge and Mrs. Nelson, in his presence, "This is Dr. Nickell and he'll take care of you," arose and proceeded to examine and treat them, Nickell did not say or do anything in negation of the impression conveyed by introducing him as Dr. Nickell. Although he did not by any utterance on his part apply the title "doctor" to himself, he remained silent and did nothing to correct the erroneous impression which the office girl, who was under his supervision as the office manager, had created in his presence and hearing, by a statement upon which he acted in promptly attending to Miss Hodge and Mrs. Nelson. In addition, there is the testimony of Walter A. Drews, the investigator for the official State Board of Medical Examiners, that on February 7, 1931, at the same offices in Milwaukee, he asked the defendant whether he was Dr. Nickell, and that the defendant replied, "Yes, sir, I am."

The word "assume," which is used in sec. 147.14 (3), Stats., is defined as follows:

"(1) To take up or into; to receive; to adopt; (2) To take to or upon one's self; to take formally and demonstratively; to put on; (3) To pretend to possess. Synonyms: Put on, counterfeit, sham,—assume, affect, pretend, simulate, feign." Webster's New International Dictionary (1930 Revision).

To which may be added from Funk & Wagnalls' New Standard Dictionary (1926):

"To put on deceitfully; take the semblance of; affect; pretend; outwardly seem. Synonyms: Accept, affect, appropriate, arrogate, claim, feign, postulate, put on, take, usurp."

In view of the circumstances and transactions at that office on February 5, 6, and 7, 1931, in which Nickell participated, it was within the province of the jury to find, under the evidence, that Nickell on or about February 6, 1931, did *assume* the title "doctor" in a way that tended to represent him as doctor in a branch of treating the sick and, consequently, in violation of sec. 147.14 (3), Stats.; and that, as he did not then possess a license to practice under sec. 147.17, Stats., he was guilty as charged. From what was then said by others in Nickell's hearing, and his conduct and statements in immediate response thereto, the jury could rightly infer that he did then adopt, take upon himself, feign, affect, or pretend to possess that title. Manifestly, in answering, "Yes, sir, I am," to Drews' question whether he was "Dr. Nickell," he affirmed that title. Less convincing to some degree, but equally misleading and deceptive, was his silence when, upon hearing that title falsely applied to himself by a subordinate employee, he responded thereto and, as in response thereto, adopted and took that title upon himself by affecting and pretending to have the knowledge, skill, and legal privilege to treat the sick which that title implied under the existing circumstances.

On the redirect examination of Miss Hodge, after she had previously testified regarding her complaint about headaches and what Nickell had said in relation thereto, she was asked by the State's attorney, "Now what, if anything, did the defendant, Nickell, say about treating or healing headaches?" An objection that the question was leading and improper redirect was overruled, and that ruling is now complained of. No error was committed. The question was not leading. It called for the conversation itself, and not merely for a "yes" or "no" answer as to whether there had been a conversation on the subject. Likewise, it neither stated nor suggested the substance of a conversation, but merely confined the inquiry to a statement, if any, by Nickell on the subject of treating or healing headaches. Whether or not the question was proper on the redirect examination was a matter which was within the discretion of the court and its ruling was proper. The defendant has had a fair and impartial trial.

*By the Court.*—Judgment affirmed.